**UNITED STATES DISTRCIT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| **FAGBEMI MIRANDA,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No. 1:21-cv-11731-DJC** |
| ) | |
| **STEPHEN KENNEDY,** ) | |
| ) | |
| **Respondent.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                          **July 26, 2022**

**I.     Introduction**

Petitioner Fagbemi Miranda ("Miranda") has filed a petitioner for writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254.  D. 1.  Stephen Kennedy, Superintendent of the Old Colony Correctional Center in Bridgewater, Massachusetts ("Respondent") opposes the Petition. D. 17.  For the reasons set forth below, the Court DENIES the Petition.

**II.     Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), when a petitioner raises a claim that was adjudicated on the merits in state court, federal habeas courts must defer to the state court's determination unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007) (quoting 28 U.S.C. § 2254(d)).

1

For the purposes of § 2254(d)(1), federal law is defined as Supreme Court holdings and excludes dicta. White v. Woodall, 572 U.S. 415, 419 (2014). A state court's decision is contrary to clearly established federal law if it "'contradicts the governing law set forth in the Supreme Court's cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court' but reaches a different result." Companonio v. O'Brien, 672 F.3d 101, 109 (1st Cir. 2012) (quoting John v. Russo, 561 F.3d 88, 96 (1st Cir. 2009)). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Scott v. Gelb, 810 F.3d 94, 101 (1st Cir. 2016) (emphasis omitted) (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)). Not even clear error will establish an objectively unreasonable conclusion. White, 572 U.S. at 419. Habeas relief is not warranted unless the petitioner has "show[n] that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

For the purposes of § 2254(d)(2), factual determination made by a state court are presumed correct unless rebutted by "clear and convincing evidence." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)). "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Id. (citing 28 U.S.C. § 2254(d)(2)).

III.   **Relevant Factual and Procedural Background**

The following facts are drawn from the decision of the Supreme Judicial Court affirming Miranda's conviction, Commonwealth v. Miranda, 484 Mass. 799 (2020).

A.      **The Commission of the Crimes**

The charges against Miranda arose from an altercation that took place on October 10, 2005, outside the home where Miranda lived with his family.  Id. at 800–01.  At around 8:30 p.m., Miranda and the victim engaged in a loud verbal argument that drew the attention of several neighbors.  Id. at 801.  Miranda assumed an aggressive stance and both men gestured as they screamed at each other in close proximity, but they never made physical contact.  Id.  Miranda's younger brother, Wayne Miranda ("Wayne"), joined the argument shortly after it began.  Id.  Wayne then went into the Miranda home and reemerged with a black handgun visible in his right hand.  Id.  Wayne pointed the handgun at close range at the victim's forehead.  Id.  The victim stepped back holding his hands up by his shoulders, palms facing out, while saying "No."  Id.

The victim ran across the street and into the open driveway alongside the neighbor's house.  Id.  Wayne chased after the victim with Miranda following close behind.  Id.  As the victim raced down the driveway with Wayne in close pursuit, the neighbor, who lived on the second floor of the house on that property, opened a window and yelled out, "No, Waynie, no.  Think of your daughter."  Id. at 802.  The Miranda brothers stopped in front of the garage and then Wayne passed the gun to Miranda.  Id.  The neighbor saw Miranda raise the gun and point it toward the picket fence.  Id.  The sound of two gunshots rang out in quick succession.  Id.

B.      **Police Investigation and Charge**

Police responded to an 8:32 p.m. dispatch of shots fired in the area.  Id. at 803.  Police searched the area and soon located the victim's unconscious body on the other side of the picket fence.  Id. at 804.  The victim was unarmed and no weapons were found nearby.  Id.  The victim was pronounced dead upon arrival at the hospital.  Id.

When police responded to the call, the neighbor spoke to an officer for about two minutes but did not report what she had seen in the driveway.  Id.  When the officer asked the neighbor to come to the police station to make a formal statement, she refused because, as she later testified, she feared the Mirandas.  Id.

In April 2007, about eighteen months later, police executed a search warrant at the neighbor's home that led to the arrests of the neighbor and her then boyfriend for trafficking cocaine in a school zone and related charges.  Id. at 806.  The neighbor entered into a cooperation agreement with the Commonwealth whereby she would avoid incarceration in connection with the pending drug charges and receive relocation assistance through witness protection in exchange for her truthful testimony regarding the shooting.  Id.

The neighbor later testified as a witness for the Commonwealth on three occasions:  (1) in March 2008, before a grand jury that led to the indictment against Miranda; (2) four months later, at Wayne's trial; and (3) almost five years later, at Miranda's trial.  Id.

### C.    Relevant State Court Proceedings

#### 1.    State Court Trial

Miranda's trial began on May 28, 2013, in Bristol Superior Court.  See D. 11-1 at 240. Defense counsel raised reasonable doubt regarding the neighbor's credibility and her identification of Miranda as the shooter.  Miranda, 484 Mass. at 806.  Against the advice of counsel, Miranda chose to testify.  Id. at 807.  Miranda was the only witness for the defense and testified in uninterrupted narrative form.  Id.  On cross-examination Miranda admitted that he, and not Wayne, had shot the victim but claimed that he did so in self-defense.  Id. at 809.  During cross-examination, the prosecution tried to show that nothing prevented Miranda or Wayne from stopping their chase of the victim or going back into their house.  Id.  In response, Miranda testified

that he was "not going to run away" and that "[he was] going to protect [his] house." Id.  Miranda also admitted to following the victim and, although he did not intend to kill him, that he had held the gun in two hands for steady aim and shot the victim twice while he was climbing over a fence. Id.

### 2.   *Defense Counsel*

#### a)   First Attorney's Motion to Withdraw

On March 24, 2008, Attorney John Moses ("Moses") was appointed to represent Miranda. See D. 11-1 at 22 (citing docket).  On December 15, 2011, at Miranda's request, Moses filed a motion to withdraw citing a breakdown of the attorney-client relationship "with no reasonable chance of repair." Miranda, 484 Mass. at 814.  Moses explained to Miranda that the best plan of defense was to highlight the neighbor's significant credibility issues as an eyewitness. Id.  Miranda objected to his counsel's proposed strategy and insisted that he fired the gun in self-defense.  Id.  Miranda said he would testify, thereby "corroborating the neighbor's most significant testimony and undercut[ting] the strategy his counsel . . . deemed best." Id. (alteration in original) (internal quotation marks omitted).  The judge granted the motion to withdraw.  Id. at 815.  Miranda received new appointed counsel, Attorney Frank Camera ("Camera"), who ultimately tried the case. Id.; see D. 11-1 at 23.

#### b)   Second Attorney's Motion to Withdraw

In May 2013, in the lead-up to trial, Camera filed a motion to withdraw at Miranda's request. Miranda, 484 Mass. at 815; D. 11-1 at 26 (citing docket).  Although Miranda and defense counsel agreed on the objective of outright acquittal, they differed on what approach should be used to achieve that end.  See id. at 816.  Camera cited a breakdown in the attorney-client relationship, but this time the judge denied the withdrawal motion.  Id.  The judge concluded that

Miranda was not prepared to represent himself, and "there was no reasonable prospect that different defense counsel would come to any different conclusions with respect to strategy or the wisdom of [Miranda's] intention to testify." Id. (internal quotation marks omitted). Attorney Camera remained Miranda's counsel through trial.

On June 5, 2013, a jury convicted Miranda of first-degree murder on theory of deliberate premeditation, assault and battery with a dangerous weapon, and unlawful possession of a firearm. See D. 1 at 1. The trial court sentenced Miranda to a term of life imprisonment without parole. Id.

### 3.    Post-Trial Proceedings

On June 3, 2014, Miranda appealed his conviction. See D. 11-1 at 142. The Supreme Judicial Court stayed that appeal, pending the filing of a motion for a new trial. Id. On January 27, 2017, Miranda filed a motion for a new trial. Id. at 17–19. Miranda asserted, among other things, that defense counsel contradicted Miranda's testimony that he shot the victim in self-defense, that Miranda's right to testify was violated, ineffective assistance of counsel, and that the trial judge failed to instruct the jury on self-defense. Id. The Superior Court held a non-evidentiary hearing and denied the motion for a new trial. Miranda, 484 Mass. at 817.

Miranda appealed the denial of his motion for a new trial and his conviction to the Supreme Judicial Court. See D. 11-1 at 143, 796. On June 9, 2020, the Supreme Judicial Court affirmed Miranda's convictions and the denial of his motion for a new trial. See id. at 144; Miranda, 484 Mass. at 800. Miranda then submitted a petition for certiorari to the United States Supreme Court, which was denied on November 2, 2020. See D. 1 at 3; Miranda v. Massachusetts, __ U.S. __, 141 S. Ct. 683 (2020).

D.      **This Petition**

Miranda filed the Petition on October 22, 2021.  D. 1.  The Petition asserts two grounds. Ground One asserts that Miranda's Fifth, Sixth and Fourteenth Amendment rights to make fundamental decisions, to testify, to effective assistance of counsel and to due process of law were violated because:  (1) trial counsel refused to investigate and present Miranda's chosen defense of self-defense and instead pursued a conflicting defense; (2) counsel required Miranda to testify in narrative form and without preparation by counsel; and (3) counsel argued in closing that Miranda's testimony should not be believed.  Id. at 5; D. 1-1 at 1–3.  Ground Two asserts that Miranda's Fourteenth Amendment right to due process of law was violated by the trial judge's refusal to charge the jury on self-defense.  D. 1 at 7; D. 1-1 at 4.

IV.    **Discussion**

A.      **Miranda was Not Denied the Right to Control the Fundamental Objectives of His Case**

Miranda argues that when defense counsel refused to investigate and present Miranda's chosen defense and instead pursued a conflicting defense, defense counsel violated Miranda's right to make fundamental decisions regarding his defense.  D. 1 at 5; D. 1-1 at 1–2; D. 16 at 8–13.

The Sixth Amendment guarantees criminal defendants the "right to choose between pleading through a lawyer and representing oneself."  Faretta v. California, 422 U.S. 806, 828 (1975).  Once a defendant chooses to avail himself of the right to an attorney, he loses the "power to make binding decisions of trial strategy in many areas."  Kellogg-Roe v. Gerry, 19 F.4th 21, 27 (1st Cir. 2021) (quoting Faretta, 422 U.S. at 820).

"Giving the attorney control of trial management matters is a practical necessity." Gonzalez v. United States, 553 U.S. 242, 249 (2008).  "The adversary process could not function effectively if every tactical decision required client approval."  Id. (quoting Taylor v. Illinois, 484

U.S. 400, 418 (1988)).  Therefore, decisions reserved to counsel are strategic or trial management decisions, such as "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence."  McCoy v. Louisiana, __ U.S. __, 138 S. Ct. 1500, 1508 (2018) (quoting Gonzalez, 553 U.S. at 248).  By contrast, decisions left to the client are "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal."  Id. (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)).

During the motion to withdraw hearing regarding trial counsel, counsel offered to withdraw and to allow Miranda to proceed *pro se*, with or without counsel's assistance as "stand-by counsel." Miranda, 484 Mass. at 824 n.36.  Miranda asserted that he did not wish to continue to try the case *pro se*.  Id.  Once Miranda rejected the offer to proceed *pro se* and agreed to work with defense counsel, Miranda lost the power to make strategic or trial management decisions.  See McCoy, 138 S. Ct. at 1508.  Miranda, however, still maintained the fundamental right to choose the objective of his case.  See id.

In McCoy, the defendant was on trial for capital murder and "adamantly objected to any admission of guilt."  McCoy, 138 S. Ct. at 1505.  Defense counsel, nonetheless, proceeded to tell the jury that the defendant was guilty of the murders.  Id.  McCoy concluded that defense counsel violated the defendant's Sixth Amendment right because the "[a]utonomy to decide that the objective of the defense is to assert innocence" is reserved for the client.  Id.

Here, unlike in McCoy, Miranda and defense counsel shared the same principal objective, namely, outright acquittal; however, they differed as to what the "strategic and tactical approach should be used to achieve that end."  Miranda, 484 Mass. at 822.  Miranda wanted to pursue a self-defense strategy in which he would testify to being the shooter.  Id. at 823.  Defense counsel believed that a self-defense claim did not exist because Miranda had numerous opportunities to

retreat but chose not to do so.  Id.  The Supreme Judicial Court concluded that defense counsel was correct; there was no self-defense claim available to Miranda.  Id.  Therefore, once Miranda had decided on the objective of outright acquittal, counsel reserved the right to pursue a defense strategy that he believed was in Miranda's best interest.  Id. at 820.

Given these facts, the Supreme Judicial Court reasonably concluded that Miranda's right to control the fundamental objective of his trial was not violated.  Accordingly, Miranda is not entitled to habeas relief on this basis.

### B.    Miranda's Sixth Amendment Right to Testify was Not Violated

Miranda challenges defense counsel's decision to allow Miranda to testify in narrative form without preparation by counsel.  D. 1 at 5; D. 1-1 at 2–3; D. 16 at 13–21.  The issue is whether defense counsel's lack of guidance undermined Miranda's testimony as to negate his Sixth Amendment right.  See Miranda, 484 Mass. at 826.

A defendant's right to testify on his own behalf is a fundamental constitutional right.  Rock v. Arkansas, 483 U.S. 44, 52 (1987).  Not all constitutional errors, however, automatically require reversal of a conviction.  Weaver v. Massachusetts, __ U.S. __, 137 S. Ct. 1899, 1907 (2017) (citing Arizona v. Fulminante, 499 U.S. 279, 306 (1991)).  If the government shows "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," then the error is deemed harmless.  Id. (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).

Still, some errors are considered "structural" and not deemed harmless.  Id.  "[T]he defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'"  Id. (alteration in original) (quoting Fulminante, 499 U.S. at 310).  "The purpose of the structural error doctrine is to ensure insistence

on certain basic, constitutional guarantees that should define the framework of any criminal trial."
Id.

Here, the Supreme Judicial Court concluded that defense counsel erred by not directing Miranda's testimony. Miranda, 484 Mass. at 829. The court considered the issue under Mass. R. Prof. C. 3.3(e), which provides that if defense counsel knows that the defendant intends to perjure himself, counsel may not aid in construing false testimony. See Mass. R. Prof. C. 3.3(e); Miranda, 484 Mass. at 829–30. Defense counsel, however, did not present a "firm basis in fact to conclude [Miranda] was about to perjure himself." Miranda, 484 Mass. at 828. Thus, the Supreme Judicial Court concluded that Miranda was entitled to the "guiding hand of counsel at every step in the proceedings against him," id. at 828–29 (quoting Powell v. Alabama, 287 U.S. 45, 69 (1932)), and defense counsel should have deployed "professional judgment, skill, and legal knowledge to assist the defendant in presenting his version of events to the jury," id. at 829.

The Supreme Judicial Court nonetheless concluded that defense counsel's error did not constitute a structural error. Id. at 830. As the court noted, the issue was not whether there was a deprivation of Miranda's constitutional right to testify, but whether counsel correctly allowed Miranda to testify in narrative form without direct examination. Id. at 830–31. Miranda asserted his Sixth Amendment right when he chose to testify. Id. at 814, 829–31 (noting that Miranda "was not prevented from testifying, as he did so," and "defense counsel continued to represent the defendant throughout the trial, provided the defendant with careful advice regarding the decision to testify, and ultimately deferred to the defendant's desire to testify, although contrary to that advice"). Further, during his testimony, Miranda admitted "that he fired the shots intentionally after following the victim into the back yard." Id. at 829. Therefore, it was not the form, but the

substance of Miranda's testimony that "undermined [his] opportunity for acquittal." Id. at 829–31.

Given these facts, the Supreme Judicial Court reasonably concluded that Miranda's Sixth Amendment right to testify was not violated, so Miranda is not entitled to habeas relief on this basis.

### C.     Miranda was Not Prejudiced by Defense Counsel's Closing Argument

Miranda contends that defense counsel provided ineffective assistance by undermining Miranda's testimony during counsel's closing argument. D. 1 at 5; D. 1-1 at 3; D. 16 at 22–23.

To establish ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), a defendant must show "(1) deficient performance by counsel (2) resulting in prejudice." Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009) (quoting Malone v. Clarke, 536 F.3d 54, 63 (1st Cir. 2008)). To demonstrate deficient performance, a defendant must show that his counsel's performance "fell below an objective standard of reasonableness under the circumstances." Id. (quoting Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007)). To demonstrate prejudice, a defendant must show "that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." Id. (quoting Sleeper, 510 F.3d at 39).

A defendant has the constitutional "right to effective representation, not a right to an attorney who performs his duties 'mistake-free.'" Weaver, 137 S. Ct. at 1910 (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 147 (2006)). Strickland noted that "[t]here are countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689. A counsel's strategic decisions do not amount to ineffective assistance unless they are "so manifestly unreasonable as to be unprotected by the labels of trial strategy or trial tactics." Commonwealth

v. Adams, 374 Mass. 722, 728 (1978) (citations and internal quotation marks omitted).  Even if a petitioner successfully presents a viable alternative trial strategy that could have been employed, counsel's decision is not automatically rendered "manifestly unreasonable."  Smith v. Dickhaut, No. 12-cv-30120-MGM, 2015 WL 12856458, at *13 (D. Mass. May 28, 2015) (quoting Castillo v. Matesanz, 348 F.3d 1, 13 (1st Cir. 2003)).

When a petitioner brings a habeas claim alleging ineffective assistance of counsel, the Court's review is highly deferential.  See Harrington, 562 U.S. at 105 (explaining that, because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so" (citations and internal quotation marks omitted)).  Thus, when a federal court conducts a habeas review, the question is not whether counsel's actions were reasonable under § 2254(d), but rather whether there is "any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

Miranda argues that defense counsel provided ineffective assistance by undermining Miranda's testimony during counsel's closing argument.  D. 1 at 5; D. 1-1 at 3.  At trial, against advice of counsel, Miranda chose to testify.  Miranda, 484 Mass. at 807.  Miranda testified that he "followed the victim all the way down the driveway" and "admitted that he, and not Wayne, had shot the victim."  Id. at 808–09.  Miranda was convinced that once he told the jury the truth of what happened that night the jury would be sympathetic to his self-defense strategy.  Id. at 807. However, given defense counsel's knowledge of the law, defense counsel knew that Miranda did not have a self-defense claim, because Miranda did not retreat but instead pursued the victim.  Id. at 811.  Defense counsel, therefore, chose a strategy in "compliance with professional ethical requirements."  See id. at 820.

When delivering his closing argument, defense counsel addressed Miranda's testimony as follows: "[Y]ou can credit everything [the defendant] said.  You can do that.  Take it at face value, that's what he did, that's what happened."  Id. at 832 (alteration in original).  Defense counsel further stated:  "[Y]ou also have the option of not crediting [the defendant] at all.  That's up to you. . . .  Maybe [you think] he's doing that . . . to protect Wayne, his baby brother."  Id. (alterations in original).  In conclusion, defense counsel emphasized "enormity of the burden of proof beyond a reasonable doubt."  Id.  Such performance was not deficient where the closing argument did not undermine Miranda's testimony, but instead gave the jury alternative considerations:  believing Miranda and accepting his self-defense assertion or not crediting him, but still finding that the Commonwealth had failed to prove its case against him beyond a reasonable doubt.

Even assuming *arguendo* that defense counsel's performance in his closing argument was deficient, Miranda has not shown that the Supreme Judicial Court's determination on prejudice was unreasonable.  See Harrington, 562 U.S. at 105.  The Supreme Judicial Court concluded that defense counsel "made the best arguments he could under the circumstances when confronted with the defendant's admission of an intentional shooting and the absence of a viable claim of self-defense."  Miranda, 484 Mass. at 833.  The court further concluded that, as an experienced defense lawyer, defense counsel "knew [Miranda's] claim of self-defense was not viable," but nevertheless, "advocate[d] for a self-defense instruction, which the judge correctly rejected."  Id.  Because there was no viable self-defense claim, defense counsel's summation did not prejudice Miranda.  See id. at 834.

Miranda suggests that prejudice should be presumed here under United States v. Cronic, 466 U.S. 648 (1984).  See D. 16 at 14–15.  Although ineffective assistance claims generally require that the defendant prove prejudice, in certain cases prejudice is presumed.  See Strickland, 466

U.S. at 692.  For example, prejudice is presumed "if the accused is denied counsel at a critical stage of his trial," including when counsel is "either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."  Cronic, 466 U.S. at 659 & n.25 (collecting cases).  However, "the Cronic exception is exceedingly narrow."  United States v. Theodore, 468 F.3d 52, 56 (1st Cir. 2006) (citing Florida v. Nixon, 543 U.S. 175, 190 (2004)).  For the Cronic exception to apply, "the attorney's failure must be complete."  Bell v. Cone, 535 U.S. 685, 697 (2002) (declining to apply Cronic where respondent did not argue his counsel was deficient throughout the entire sentencing proceeding, but rather only at "specific points").  Said differently, "the circumstances leading to counsel's ineffectiveness [must be] so egregious that the defendant was in effect denied any meaningful assistance at all."  Theodore, 468 F.3d at 56 (alteration in original) (citation omitted).

"[S]eldom [do] circumstances arise that justify a court in presuming prejudice (and, concomitantly, in forgoing particularized inquiry into whether a denial of counsel undermined the reliability of a judgment)."  Ellis v. United States, 313 F.3d 636, 643 (1st Cir. 2002) (citing Mickens v. Taylor, 535 U.S. 162, 166–68 (2002)).  Other circuits have applied the Cronic exception where defense counsel repeatedly slept during the introduction of evidence adverse to the defendant, Burdine v. Johnson, 262 F.3d 336, 338 (5th Cir. 2001), and where counsel sat silently through essentially the entire trial, Harding v. Davis, 878 F.2d 1341, 1345 (11th Cir. 1989). The First Circuit has expressed a "hesitance to apply Cronic's presumption of prejudice to situations of 'bad lawyering.'"  Fusi v. O'Brien, 621 F.3d 1, 7 (1st Cir. 2010) (citing Theodore, 468 F.3d at 56–58); see Scarpa v. DuBois, 38 F.3d 1, 13–14 (1st Cir. 1994) (stating that "attorney error, even when egregious, will almost always require analysis under Strickland's prejudice prong").

Given <u>Cronic</u>'s "exceedingly narrow" reach, <u>see</u> <u>Theodore</u>, 468 F.3d at 56, and that its exception only applies when the attorney's failure is "complete," <u>Bell</u>, 535 U.S. at 697, Miranda's argument fails.  Defense counsel advised Miranda that testifying would be against his best interest, but the final decision was Miranda's.  <u>Miranda</u>, 484 Mass. at 824 n.36.  Once Miranda rejected defense counsel's advice, "counsel responded to the defendant's testimony with a closing argument encompassing alternatives."  <u>Id.</u>  Because "[t]here are countless ways to provide effective assistance in any given case," <u>Strickland</u>, 466 U.S. at 689, defense counsel's "step-by-step approach was sensible and not ineffective."  <u>Miranda</u>, 484 Mass. at 824 n.36.

For all these reasons, Miranda has not met his burden in demonstrating that the Supreme Judicial Court's conclusion in this regard was unreasonable.  <u>See</u> <u>Harrington</u>, 562 U.S. at 105. Accordingly, Miranda is not entitled to habeas relief on this basis.

### D.    <u>Miranda's Fourteenth Amendment Right to Due Process was Not Violated</u>

Miranda contends in Ground Two of the Petition that the trial judge erred by failing to instruct the jury on self-defense.  D. 1 at 7; D. 1-1 at 4; D. 16 at 23–27.  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241; <u>Rose v. Hodges</u>, 435 U.S. 19, 21 (1975)).  Accordingly, "[a]s a general rule, improper jury instructions will not form the basis for federal habeas relief."  <u>Hardy v. Maloney</u>, 909 F.3d 494, 499 (1st Cir. 2018) (quoting <u>Niziolek v. Ashe</u>, 694 F.2d 282, 290 (1st Cir. 1982)).  "That is because state law typically governs jury instructions, and an error 'under state law is not a basis for habeas relief.'"  <u>Id.</u> (quoting <u>Estelle</u>, 502 U.S. at 71–72).  An error in jury instructions only rises to the level of a due process violation if the omission of the instructions "so infected the entire trial that

the resulting conviction violates due process." Estelle, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

Miranda argues that the trial judge's refusal to instruct the jury on self-defense violated his Fourteenth Amendment due process rights.  D. 1 at 7; D. 1-1 at 4; D. 16 at 23–27.  Under Massachusetts law, before instructing a jury on self-defense the trial judge must gauge the sufficiency of evidence by "consider[ing] the evidence, from any source, and resolv[ing] all reasonable inferences in favor of the defendant." Commonwealth v. Ortega, 480 Mass. 603, 610 (2018) (citing Commonwealth v. Santos, 454 Mass. 770, 773 (2009)).  For a judge to issue jury instructions on self-defense there must be evidence warranting at least a reasonable doubt that the defendant:  (1) had reasonable ground to believe "that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force"; (2) tried all proper means to avoid physical combat before resorting to deadly force; and (3) did not use more force than reasonably necessary.  Commonwealth v. Toon, 55 Mass. App. Ct. 642, 645 (2002) (citing Commonwealth v. Harris, 376 Mass. 201, 208 (1978)).  Thus, a person who does not "availed himself of all means, proper and reasonable under the circumstances, of retreating from the conflict before resorting to the use of deadly force" cannot claim the right to self-defense.  See id. (citing Commonwealth v. Kendrick, 351 Mass. 203, 212 (1966)).

Here, "all the record evidence, including [Miranda's] own testimony, indicates that when the victim [took] off across the street and away from the Miranda brothers, [Miranda] had no reasonable basis for concluding that the victim was armed" and "voluntarily pursued the fleeing victim." Miranda, 484 Mass. at 811 (internal quotation marks omitted).   Given these facts, the Supreme Judicial Court reasonably concluded that a self-defense instruction was not appropriate under Massachusetts law because Miranda had "multiple opportunities to disengage before the

shooting" but chose not to do so.  Id.  Accordingly, Miranda is not entitled to habeas relief on this ground.

**V.      Conclusion and Certificate of Appealability**

For the foregoing reasons, the court DENIES the Petition, D. 1.  Miranda may receive a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Miller-El, 537 U.S. at 338 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  If Petitioner seeks a certificate of appealability, the Court gives Petitioner until August 16, 2022 to file a memorandum addressing the issue of whether a certificate of appealability is warranted as to either or both Grounds in the Petition.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge